IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM HARTSFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV00878 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, William Hartsfeld, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. §§ 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

**PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on February 17, 2005, alleging a disability onset date of October 12, 2000. (Tr. 82-84.)[1] His application was denied initially and upon reconsideration. (Tr. 31, 32.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 52.) Present at the hearing, held on October

---

[1] Transcript citations refer to the administrative record.

25, 2007, were Plaintiff, his attorney, and a vocational expert ("VE"). (Tr. 19.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 19-30.) On October 8, 2008, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 7.)

In rendering this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2001.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 12, 2000 through his date last insured of September 30, 2001 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: bilateral knee pain secondary to medial meniscal tear, chronic, status post arthroscopies; fracture of the right wrist, status post open reduction internal fixation; depression, anxiety and alcohol abuse (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no more than frequent pushing and pulling of arm and feet controls. The claimant required a sit/stand option in ½ hour increments. He had postural limitations of no climbing of ropes and ladders, but occasional climbing of stairs. He could occasionally balance, crouch, kneel, crawl and stoop. He could frequently use his right upper extremity for handling and

> fingering, but could not perform these functioning constantly. He had environmental limitations of no concentrated exposure to vibrations or work place hazards (such as unprotected heights and dangerous machinery). The claimant could carry out simple instructions and remember and [make] simple work-related decisions. He could respond appropriately to supervisors and coworkers, but should not work closely with the general public or in close coordination with others, but could have worked in the presence of co-workers. His work needed to be low stress with no numerical production quotas.

(Tr. 21, 25, 26-27.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff was unable to perform his past relevant work as a carpenter. (Tr. 29.) He found that transferability of job skills was not an issue in the case, but added that Plaintiff has a high school education and can communicate in English. (Id.) Finally, because Plaintiff was 50 years old at the time of the ALJ's decision, the ALJ noted that he was regulatorily defined as "an individual closely approaching advanced age." (See id. (citing 20 C.F.R. §§ 404.1563).) Based on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c) and 404.1566).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date on October 12, 2000, through September 30, 2001, the date last insured. (Tr. 30.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

-4-

decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Social Security Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

-6-

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any
(continued...)

### Assignments of Error

Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to (1) "adequately account for [Plaintiff's] limitations in understanding, remembering[,] and carrying out instructions," (2) "consider all important evidence," (3) "assess and incorporate all of the Plaintiff's physical and mental limitations into her assessment of the Plaintiff's residual functional capacity," and (4) base her step-five determination on substantial evidence. (Docket Entry 10 at 3.) Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff was not disabled. (Docket Entry 12 at 12.)

**1.  Mental RFC Determination**

Plaintiff's first three claims present variations of a single issue, that is, whether the ALJ properly determined Plaintiff's mental RFC. In particular, Plaintiff questions whether the ALJ adequately considered the mental assessments by Drs. Margaret Wiebe, Eleanor Cruise, and H. Ezell Branham in formulating the RFC set out in her decision. (Docket Entry 10 at 4-8.)[6] Plaintiff further contends that the mental RFC in question "fail[ed] to

---

[5] (...continued)
step of the process, review does not proceed to the next step.").

[6] Drs. Wiebe and Cruise are consultative psychological examiners for the Social Security Administration's disability determination services ("DDS"), which consists of federally-funded state agencies responsible for developing medical evidence and rendering initial disability determinations. (See Tr. 212, 662); see also Social Security Administration, Disability Determination Process, http://www.ssa.gov/disability/determination.htm (last visited Jan. 3, 2012). Dr. Branham is an independent psychiatrist. (See Tr. 641.)

-8-

account for the multitude of limitations" described by these three physicians. (Id. at 9.)

As an initial matter, the ALJ's alleged failure to discuss the mental limitations set forth by Drs. Wiebe, Cruise, and Branham does not necessitate a finding of error. Simply stated, there is no requirement that an ALJ discuss each piece of evidence in her decision. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Moreover, even a cursory reading of the ALJ's decision reveals that she did, in fact, consider the limitations set forth by Drs. Wiebe and Cruise. Plaintiff simply ignores the language of the examiners' conclusions and recommendations, which the RFC all but quotes. He focuses instead on the mental activity limitations checked by Drs. Wiebe and Cruise in their underlying functional capacity assessments.

In particular, Plaintiff's argument repeatedly equates "moderate" limitations, as termed in these assessments, with "significant" limitations. A plain-language reading of both the applicable listings and the assessments themselves reveal the error in this line of thinking. As the ALJ's decision accurately reflects, a mental impairment, or combination of mental impairments, must result in a "marked" limitation in at least two areas of mental activity in order to equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (See Tr. 25; see also 20 C.F.R. 404.1520(d), 404.1525, and 404.1526.)

"A marked limitation means *more than moderate* but less than extreme." (Tr. 25 (emphasis added).) Here, neither Dr. Wiebe nor Dr. Cruise assessed Plaintiff as more than moderately limited in any area, let alone two or more. Plaintiff does not contend otherwise, but instead merely alleges that Dr. Wiebe found that Plaintiff had moderate functional limitations in five of twenty mental activity areas and that Dr. Cruise found moderate limitations in six of these areas. Plaintiff provides no evidence at all of the "significant limitations" he alleges. (See Docket Entry 10 at 5.)

The conclusions and recommendation set forth by Drs. Wiebe and Cruise further demonstrate the limited nature of Plaintiff's mental impairments. Dr. Cruise, for example, found that Plaintiff suffers from moderate limitations in his abilities to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms, (5) accept instructions and respond appropriately to criticism from supervisors, and (6) respond appropriately to changes in the work setting. (Tr. 658-59.) Despite these limitations, Dr. Cruise summarized Plaintiff's abilities as follows:

    A) able to understand and remember simple instructions without significant difficulty
    B) able to sustain adequate attention and concentration to complete simple tasks
    C) able to appropriately interact with others
    D) able to adjust to routine changes

-10-

Case 1:08-cv-00878-TDS -LPA   Document 15   Filed 01/05/12   Page 10 of 14

(Tr. 660.) Overall, she concluded that Plaintiff was capable of simple, routine, repetitive tasks. (Id.) After performing a similar assessment, Dr. Wiebe primarily agreed with Dr. Cruise, but added that Plaintiff would benefit from low production tasks with limited personal interaction. (Tr. 212.)

Based on these findings, the ALJ formulated the following mental RFC:

> The claimant could carry out simple instructions and remember and [make] simple work-related decisions. He could respond appropriately to supervisors and coworkers, but should not work closely with the general public or in close coordination with others, but could have worked in the presence of co-workers. His work needed to be low stress with no numerical production quotas.

(Tr. 26-27.) A comparison of this summary with the conclusions of Drs. Wiebe and Cruise makes it abundantly clear that the ALJ in this case fully considered and incorporated their findings into her decision. Because Plaintiff has failed to demonstrate that the ALJ's RFC determination conflicts with the assessments of Drs. Wiebe and Cruise, the Court finds no error.

Plaintiff next argues that "the ALJ also failed to fully consider the limitations assessed by Dr. H. Ezell Branham," who "found that the Plaintiff suffers from a bi-polar disorder which has associated features of depressed and irritable mood, anhedonia, appetite disturbance, sleep disturbance, psychomotor agitation, decreased energy and feelings of guilt and worthlessness." (Docket Entry 10 at 6.) However, as Defendant points out in his brief, "the doctor's opinion is based on medical observations made between April and November 2006 and October 19, 2007 (Tr. 4, 641-647,

-11-

1024), well after Plaintiff's date last insured, September 30, 2001." (Docket Entry 12 at 6.) As such, Defendant contends "the ALJ [was not] under any obligation to accept the doctor's assessment since there is no evidence that it is based on the impairments or restrictions that Plaintiff experienced prior to September 2001." (Id. at 7.) Plaintiff, in turn, contends that the mental issues Dr. Branham evaluated are "long standing and documented back through VA records that precede" his date last insured. (Docket Entry 10 at 6.)

Ultimately, the timing of Dr. Branham's mental assessment is inapposite. Even if the Court accepts his evaluation as retrospective, Plaintiff encounters the same problems he faced in challenging the state agency examinations. Dr. Branham, like Drs. Wiebe and Cruise, did not categorize any of Plaintiff's mental activities as more than moderately limited. (See Tr. 1028-29.) Further, even considering the myriad associated features of bipolar disorder he attributed to Plaintiff, Dr. Branham still concluded that Plaintiff is not currently significantly limited in any area, including daily living, social functioning, or concentration, persistence, or pace. (Tr. 1026.) In short, Plaintiff again fails to show that his mental RFC is unsupported by substantial evidence or is in any way inconsistent with his medical evaluations. His challenges in that regard thus fail.

**2. Step Five Determination**

Plaintiff next argues that the VE's testimony "and the evidence of record" fail to support the ALJ's finding that

-12-

Plaintiff could maintain a full-time job. (Docket Entry 10 at 10.) At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform considering his age, education, and vocational experience in conjunction with his residual functional capacity. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). Where, as here, a claimant suffers from both exertional and nonexertional limitations, the ALJ must make this showing through the use of vocational testimony. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989). For a vocational expert's opinion to be relevant, it must be based on a hypothetical question that incorporates all of a claimant's impairments. Id. at 50-51.

Here, Plaintiff presents two arguments regarding the ALJ's step five determination. First, in an extension of his prior claim, Plaintiff alleges that the ALJ "presented a hypothetical [to the VE] that was in stark contrast to [the] opinions" of Drs. Wiebe, Cruise, and Branham. (Docket Entry 10 at 9.) For the reasons discussed above, this contention lacks merit. Plaintiff makes no claim that the ALJ's hypothetical question failed to accurately reflect his RFC; he merely rehashes his previous, unsuccessful challenge to the RFC itself.

Plaintiff's second argument is equally unavailing. Here, he contends that the VE's responses to his counsel's hypothetical questions demonstrated his inability to work:

> One of the questions posed was essentially, if the Plaintiff had multiple absences a month, would [that] effect [sic] her opinions concerning the Plaintiff's

-13-

> ability to work. (Tr. 1088). [The VE] testified the
> Plaintiff would then not be capable of maintaining work
> on a full time basis and that such an individual would
> eventually lose their job. Id.
>
> Similarly, the [VE] found that if the Plaintiff was
> unable to "walk two-thirds of the day" they would have
> difficulty maintaining full time employment. (Tr. 1089).
> We note for the record that [the ALJ's RFC] assessment
> included that the Plaintiff would "require[] a sit/stand
> option in ½ hour increments." (Tr. 26).

(Docket Entry 10 at 9.)

Although Plaintiff might well be disabled if he had to miss five days a month due to pain or needed to elevate his leg "four times throughout a shift" (Tr. 1088-89), no evidence, let alone substantial evidence, supports the existence of these restrictions in the present case. Substantial evidence thus supports the ALJ's finding at step five.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for judgment on the pleadings (Docket Entry 9) seeking a reversal of the Commissioner's decision be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 11) be **GRANTED**, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 5, 2012